UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIM ADAMS,

    Plaintiff,

v.

TERRY ANN DELORIA, et al.,

    Defendants.

Case No. 19-cv-05609-PJH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Re: Dkt. No. 26

Defendants Terry Ann DeLoria and Megan Carey's motion to dismiss came on for hearing before this court on February 19, 2020. Plaintiff Tim Adams appeared through his counsel, Stanley Apps. Defendants appeared through their counsel, Alexi Offill-Klein. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion to dismiss with prejudice for the following reasons.

**BACKGROUND**

Plaintiff Tim Adams is a tenured teacher at Terra Nova High School and a former coach of the school's varsity football team. This lawsuit arises out of his removal as the high school football coach. Plaintiff pleads two causes of action against defendants Terry Ann DeLoria, the Superintendent of the Jefferson Union High School District, and Megan Carey, the principal of Terra Nova High School, for: (1) Retaliation for protected speech in violation of 42 U.S.C. § 1983 and (2) Deprivation of due process rights in violation of 42 U.S.C. § 1983. See Second Amended Complaint ("SAC"), Dkt. 25.

On July 23, 2019, plaintiff filed the original complaint in San Mateo County

Superior Court against defendant Jefferson Union High School District (erroneously sued as Board of Trustees of Jefferson Union High School District). Dkt. 1-1. On August 1, 2019, plaintiff filed a First Amended Complaint ("FAC"). Dkt. 1-2. On September 5, 2019, defendant Jefferson Union High School District removed this case to this court based on federal question jurisdiction. Dkt. 1. On September 9, 2019, defendant Jefferson Union High School District moved to dismiss the FAC under FRCP 12(b)(6). Dkt. 6. This court granted defendant's motion in its entirety, but permitted plaintiff leave to amend because, at the motion hearing, plaintiff indicated that he would name two individuals as defendants. Dkt. 24 at 4, 7. Plaintiff's Second Amended Complaint was then timely filed and the newly added defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 26.

Plaintiff alleges that he was removed from coaching the Terra Nova Tigers high school football team because Principal Carey erroneously believed plaintiff had turned the team's fan base against her. Plaintiff also alleges a procedural due process claim on the grounds that defendants hired a non-teacher, temporary employee as head varsity coach without making such an assignment available to (and giving notice of the assignment) teachers presently employed in the school district.

Plaintiff is a teacher at Terra Nova High School, and from 2014 to 2018 served as head varsity football coach. SAC ¶ 11. On August 11, 2017, a pre-season football game turned into a brawl. Id. ¶ 13. After the scrimmage was canceled due to the brawl, plaintiff gathered the football team on the field and told the players he was proud of them for supporting each other during the brawl. Id. ¶ 21. Carey, who was present at the game, but did not see the brawl, told the players that she was disappointed in them for their involvement in the brawl. Id. ¶ 24. Carey reported the brawl to the California Interscholastic Federation and eventually forfeited the first game of the year as a self-imposed penalty. Id. ¶ 22. Parents and team supporters were unhappy about forfeiting the first game of the season. Carey and plaintiff attended a meeting with around 75 parents and supporters on August 18, 2017, during which supporters criticized defendant

2

Carey for forfeiting the football game. Id. ¶ 28.

On September 5, 2017, Carey handed a draft Letter of Reprimand to plaintiff. Id. ¶ 31. In the letter, Carey asserted that plaintiff had increased tension between the administration and the Terra Nova High School community, which led to discontent from parents and the Terra Nova High School football community. Id. ¶ 32. The draft letter also sought to punish plaintiff for sending emails to persons outside the Terra Nova High School staff, including the sports editor of the local paper, parents serving in volunteer support roles on the football team, a retired Terra Nova football coach, and an assistant coach. Id. ¶¶ 33–34. The letter instructed plaintiff that he could no longer communicate with football program volunteers. Id. ¶ 37. Plaintiff acknowledges that he "followed Principal Carey's instructions and changed his communication practices so that he no longer included football program volunteers in any communications pertaining to the Terra Nova football program." Id. ¶ 38. The letter went through several drafts over the fall of 2017 due to negotiations between plaintiff, the union representing him, and defendant Carey. Id. ¶¶ 39–46. The third draft of the letter added a demand that plaintiff refrain from engaging in "negative talk about Terra Nova administration, teachers, or other staff members." Id. ¶ 42. Plaintiff alleges that he "had never engaged in any such 'negative talk.'" Id. A final version of the letter was never placed in Adams' personnel file. Id. ¶ 47.

At a December 2017 awards ceremony at the end of the season, spectators booed Principal Carey. Id. ¶ 49. According to plaintiff, Carey believed that plaintiff had caused her to be booed by football program supporters at the ceremony. Id. ¶ 50. Plaintiff states that his professional relationship with Carey continued to deteriorate and was "challenging" throughout the following 2018 football season. Id. ¶ 53.

On January 25, 2019, Adams was told that he had been removed from his role as head varsity football coach but would retain his position as a tenured teacher at the school. Id. ¶ 54. On February 8, 2019, Carey provided plaintiff with a Memorandum of Concern stating that he had been removed for cause for "conduct in [his] role as Head

3

1  Varsity Football Coach unbecoming of the professional standards as outlined in Jefferson
2  Union High School District Board policies." Id. ¶ 55. He also contends that defendant
3  DeLoria, who is defendant Carey's supervisor, participated in and ratified the decision to
4  terminate plaintiff as head football coach. Id. ¶ 59. Plaintiff alleges that defendant Carey
5  wrongly believed that he was responsible for Carey's poor relationship with supporters of
6  the football team, because she falsely believed that he had engaged in negative talk
7  about her with parents, players, fans and/or other supporters of the Terra Nova Tigers.
8  Id. ¶ 85. Thus, plaintiff alleges his removal constituted retaliation against him for
9  protected speech.

After plaintiff's termination as head football coach, defendants hired Jason Piccolotti, who at the time was a non-teacher, temporary employee, to serve as head varsity football coach for the 2019 season. Id. ¶ 61. Plaintiff explains that Jefferson Union School District Board Policy 4121 ("Board Policy 4121") permits the school district to hire temporary employees to supervise student athletic activities "provided such assignments have first been made available to teachers presently employed in the district." Id. ¶ 66. According to plaintiff, this policy codifies and restates California Education Code § 44919(b), which provides the same requirements as the board policy to make athletic positions available first to non-temporary teachers. Id. ¶ 67. Plaintiff alleges that defendants violated his due process right, pursuant to the school board policy and Education Code § 44919(b), to be informed of the availability of the head varsity football coach position and to be offered an opportunity to serve in that position. Id. ¶¶ 68–69.

**DISCUSSION**

**A.  Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is

4

entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B. Analysis**

    **1. First Cause of Action—§ 1983 Retaliation**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff alleges a violation of the First Amendment. "The First Amendment shields public employees from employment retaliation for their protected speech activities." Hagen v. City of Eugene, 736 F.3d 1251, 1257 (9th Cir. 2013) (citing Garcetti v. Ceballos, 547 U.S. 410, 417 (2006)). However, "the State's interests as an employer in regulating the speech of its employees requires [courts] to arrive at a balance between the interests of the public employee, as a citizen,

in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id.

Courts strike this balance by considering five factors:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Id. (citing Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009)). "All the factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case." Id. (quoting Dahlia v. Rodriguez, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc)). Plaintiff has the burden to demonstrate the first three factors and if he does so, the burden shifts to defendants to demonstrate the fourth and fifth factors. See Garcetti, 547 U.S. at 418 ("The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." (citation omitted)).

### a. First Factor: Public Concern

With regard to the first factor, speech involves a matter of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Lane v. Franks, 573 U.S. 228, 241 (2014) (internal quotation marks omitted) (quoting Snyder v. Phelps, 562 U.S. 443, 453 (2011)). Whether speech involves a matter of public concern is purely a question of law. Eng, 552 F.3d at 1070 (citing Berry v. Dep't of Soc. Servs., 447 F.3d 642, 648 (9th Cir. 2006)).

Here, plaintiff characterizes the Terra Nova High School football team as a matter of public concern in the Pacifica area. SAC ¶ 60. Other courts have found that issues

6

concerning school leadership or addressing school personnel assignments to be matters of public concern. See, e.g., Duffy v. Los Banos Unified Sch. Dist., No. 15-cv-423-EPG, 2015 WL 6881119, at *6 (E.D. Cal. Oct. 28, 2015) ("The superintendent of schools was proposing to transfer a teacher and varsity coach. Because teachers and coaches in a public school district can deeply impact children's lives, school personnel assignments obviously are of considerable concern to those children, their parents, and others in the community" (quoting Lewis v. Harrison Sch. Dist. No. 1, 805 F.2d 310, 314 (8th Cir. 1986))). Accordingly, it is plausible that management of the local high school football team is a matter of public concern.

### b. Second Factor: Speech as Private Citizen

The second factor requires plaintiff to demonstrate that the speech was "spoken in the capacity of a private citizen and not a public employee." Eng, 552 F.3d at 1071; see also Garcetti, 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" Id. (quoting Posey v. Lake Pend Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1127 n.2 (9th Cir. 2008)).

Courts must undertake a "practical" inquiry to determine whether an employee acted pursuant to his or her official duty. Garcetti, 547 U.S. at 424. In turn, determining an employee's official duty requires examining an employee's official job responsibilities. Hagen, 736 F.3d at 1257. The scope of a plaintiff's job responsibilities is a mixed question of law and fact. Dahlia, 735 F.3d at 1072 (citing Posey, 546 F.3d at 1130). More specifically, the scope and content of a plaintiff's job responsibilities is a question of fact and the ultimate constitutional significance of the facts is a question of law. Hagen, 736 F.3d at 1257.

Defendants challenge whether the plaintiff spoke as a private citizen or a public

employee; they contend his speech was as a public employee and therefore not protected. Mtn. at 7. They argue that the instances of speech, identified in the SAC, were within plaintiff's job responsibilities as a high school football coach. Id. In response, plaintiff relies on Waters v. Churchill, 511 U.S. 661, 678 (1994) (plurality opinion), as permitting a First Amendment retaliation claim when a government employer retaliates against an employee based on "an erroneous and unreasonable belief about what plaintiff said." Plaintiff would apply that theory here because defendant Carey erroneously and falsely believed that plaintiff caused protected speech of others—the speech of the fans and supporters of the Pacifica football team. Opp. at 6–7. In other words, it was the speech of other people, who were speaking as private citizens, that caused Carey to retaliate against plaintiff Adams.

Wasson v. Sonoma County Junior College, 203 F.3d 659 (9th Cir. 2000), is directly on point to the issue at hand: whether an employee can bring a First Amendment retaliation claim based on the speech of others. There, the plaintiff, a professor, brought a First Amendment retaliation claim after the school district board terminated her because the board thought the plaintiff was responsible for anonymous public writings that disparaged the school district president. Id. at 661–62. Notably, the plaintiff denied she was the author of the writings. The Ninth Circuit focused on this critical fact: the plaintiff was not the speaker, but instead argued that she was retaliated against because of a mistaken belief about her identify. The court reasoned that "a First Amendment retaliation claim seeks to vindicate a public employee's exercise of free speech rights when she has suffered an adverse employment action in response to having spoken out publicly. It cannot be used to remedy a case of mistaken identity." Id. at 663. The court then held that "there can be no First Amendment claim when an employee is falsely accused of making statements uttered by someone else." Id. (emphasis added).

Wasson's holding controls here. The SAC alleges two events where team supporters directed their discontent at Principal Carey: an August 2017 meeting soon after defendant Carey forfeited a football game and a December 2017 award ceremony.

8

SAC ¶¶ 77, 79, 83. Principal Carey "believed Adams was responsible for the anger and criticism directed at her by parents of athletes and other team supporters at" the August 2017 meeting and she continued to "scapegoat" plaintiff after the December 2017 ceremony. Id. ¶¶ 78. Yet, plaintiff alleges no instance of him speaking to team supporters. In fact, Plaintiff states that he never engaged in any such "negative talk." Id. ¶ 42. Because plaintiff does not allege that he engaged in any speech directed at the parents and supporters of the team, his allegations are similar to Wasson. There, the professor claimed that the school district retaliated against her for the false belief that she wrote disparaging letters. Here, plaintiff alleges defendant Carey retaliated against him for the false belief that he communicated with team supporters. In both here and Wasson, the plaintiff alleges he or she did not speak. Because plaintiff Adams denies engaging in any speech, First Amendment protection is not available to him with regard to a purported mistaken belief by defendant Carey concerning the speech of others.

Waters v. Churchill does not require a different outcome. That case involved two nurses who engaged in a conversation, the nurses' supervisor heard about the conversation, and then fired one of the nurses because of the conversation. 511 U.S. at 664. The supervisor had received two different versions about what the nurses said; one version that would be protected by the First Amendment, one version that would not be protected. The question in Waters was what procedures were required of the supervisor to determine what the employee said. Id. at 667–68. Waters held that the government employer would be liable under the First Amendment if an unreasonable investigation led it to believe the unprotected version of the plaintiff's speech. Id. at 677. As the Wasson court pointed out, Waters does not apply to a situation where the employee denies having spoken at all. 203 F.3d at 663. Indeed, Waters required a reasonable investigation when there was a "mistake about the content of the plaintiff's speech, not about the identity of the speaker." Id. Here, plaintiff's argument is even more attenuated; there is no mistaken identity (team supporters spoke) or mistaken content (they booed defendant).

9

Throwing one last hail mary, plaintiff argues that he has standing to vindicate the rights of other speakers—i.e., the parents and other team supporters. Opp. at 7. Yet, plaintiff conflates jurisdictional standing (i.e., injury in fact, traceability, and redressability) with third party standing. Id. at 7–8. "Parties ordinarily are not permitted to assert constitutional rights other than their own." Wasson, 203 F.3d at 663. "A litigant can maintain 'third party' standing only when she satisfies a three-prong test: (1) the litigant must have suffered an 'injury in fact,' (2) the litigant must have a close relation to the third party, and (3) there must exist some hindrance to the third party's ability to protect his or her own interests." Id. (quoting Powers v. Ohio, 499 U.S. 400, 410–11 (1991)). Plaintiff does not demonstrate how he has a close relationship with any third party or why that party cannot protect his or her own interest. In sum, plaintiff cannot state a First Amendment retaliation claim for the speech of others.

Turning to the remaining instances of speech in the SAC, plaintiff alleges that, after an on-field brawl between his players and an opposing team, plaintiff told his players that he was proud of them for how they responded to protect their fellow teammates from danger. SAC ¶¶ 21, 30. Plaintiff alleges that "Principal Carey's anger stemmed from Adams' statement to his players that he was proud of them for defending their teammates." Id. ¶ 79. While the SAC does not fully detail plaintiff's job responsibilities as head coach, the ultimate constitutional significance is clear. "[T]eachers *necessarily* act as teachers for purposes of a Pickering inquiry when [1] at school or a school function, [2] in the general presence of students, [3] in a capacity one might reasonably view as official." Kennedy v. Bremerton Sch. Dist., 869 F.3d 813, 827 (9th Cir. 2017) (alterations in original) (quoting Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 968 (9th Cir. 2011). Adams spoke during a high school football scrimmage to his student athletes and addressed them as football coach, thus, he meets all three conditions. Further, plaintiff's speech "owes its existence", id., to his position as head football coach; indeed, the SAC alleges that "Head Coach Adams asked his players to take a knee in the endzone." SAC ¶ 21. His players listened to his speech because he was the football coach; this

demonstrates that plaintiff's speech was as an employee, not as a private citizen.[1]

Plaintiff has not demonstrated any speech as a private citizen. Because he fails to meet this factor, he fails to state a First Amendment retaliation claim and the court need not address the remaining factors. See Dahlia, 735 F.3d at 1067 n.4.

### 2. Second Cause of Action—§ 1983 Deprivation of Due Process

Plaintiff's second claim is for deprivation of due process under § 1983. As guaranteed by the Fifth and Fourteenth Amendments, the "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). To state a procedural due process claim, a plaintiff must allege facts showing a deprivation of a constitutionally protected liberty or property interest, and a denial of adequate procedural protections. Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 716 (9th Cir. 2011); Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).

Plaintiff contends that Board Policy 4121 and California Education Code § 44919(b) create a statutory hiring preference, which in turn vests in the employee a constitutionally protected property interest. Opp. at 8. Plaintiff further argues that he was deprived of his opportunity to obtain the hiring preference due to him under California law because he was not notified of his opportunity to exercise that preference prior to the hiring of a new head football coach. Id. at 9. Defendants contend that the statute in question did not restrict a school district's discretion to deny employment to qualified applicants; instead, it merely created a preference for applicants who are existing teachers. Mtn. at 15.

---

[1] The SAC also includes allegations that he sent emails to football program volunteers, a retired head coach who was plaintiff's predecessor, an assistant coach, and the sports editor of the Pacifica Tribune, all regarding the football program. SAC ¶¶ 33–35. Plaintiff does not allege this speech as part of his retaliation claim. See id. ¶¶ 71–89. Even if the court were to consider the speech, its fails the first, second, and third Eng test elements. First, there are no allegations the content of the emails was a matter of public concern. Second, the speech in question was undertaken as a public employee because plaintiff sent emails "pertaining to the Terra Nova Tigers." Id. ¶ 33. Third, plaintiff does not allege how the speech was a substantial or motivating factor in his termination.

11

Education Code section 44919(b) provides:

> Governing boards shall classify as temporary employees persons, other than substitute employees, who are employed to serve in a limited assignment supervising athletic activities of pupils; provided, such assignment shall first be made available to teachers presently employed by the district. Service pursuant to this subdivision shall not be included in computing the service required as a prerequisite to attainment of, or eligibility to, classification as a permanent employee of a school district.

The parties agree that Board Policy 4121 is substantively identical to Education Code section 44919(b). SAC ¶ 67; Mtn. at 11.

The California Supreme Court in California Teachers Association. v. Governing Board of Rialto Unified School District, 14 Cal. 4th 627 (1997), examined the circumstances under which section 44919(b) creates a hiring preference for teachers presently employed by a school district. Rialto determined the appropriate statutory interpretation of § 44919(b) for a teacher's claim for preferential employment rights in vacant high school coaching positions. The court explained that school districts have flexibility as to hiring of athletic coaches, which takes two forms as reflected in the statute. First, with certain restrictions not relevant here, "districts may establish the qualifications for athletic coaches as high as necessary to coincide with local preferences." Id. at 639. "Second, the discretion granted districts permits them to assess the knowledge, competence, skill and experience of any coaching applicants in accordance with the qualifications so established." Id. at 640. Taking both those factors into account, the court held that "section 44919(b) establishes, for limited-duty assignments of athletic coach, a limited employment preference for credentialed teachers presently employed by the school district, a preference conditioned on such a teacher applying for the position and meeting the qualifications established by the school district." Id. at 652–53.

Here, plaintiff does not allege any facts that he applied for the position of head football coach. In fact, plaintiff contends that defendants should have told him about the position, so that he could apply for the position. SAC ¶ 69. Rialto requires plaintiff to

12

apply for a coaching position in order to receive employment preference under § 44919(b), but that did not occur here. Accordingly, plaintiff could not receive any employment preference created by section 44919(b) and further could not have a constitutionally protected property interest.

Plaintiff seeks to overcome Rialto's holding by contending that, in the absence of state procedural protections, federal law authorizes a procedural due process claim to obtain a federal remedy for the absence of due process safeguards. Opp. at 9. Plaintiff cites Zinermon v. Burch, 494 U.S. 113 (1990), for that proposition. As relevant here, Zinermon dealt with the circumstances under which a plaintiff could bring a § 1983 claim for inadequate state law remedies. Id. at 124. The Court stated that "[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Id. at 125 (citations omitted). The Court further explained that "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." Id. at 126.

Yet, as Zinermon alludes to, a procedural due process claim first requires having a constitutionally protected interest and then the failure of the State to provide due process. The order of those events matters. A plaintiff must establish the predicate life, liberty, or property interest before any procedural safeguards attach. See, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985) ("Respondents' federal constitutional claim depends on their having had a property right in continued employment. If they did, the State could not deprive them of this property without due process." (citations omitted)). The Court in Loudermill went on to state: "[w]hile the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural

13

safeguards." Id. at 541 (second alteration in original) (quoting Arnett v. Kennedy, 416 U.S. 134, 167 (1974) (Powell, J., concurring in part and concurring in result in part)). The question here is whether the California legislature elected to confer a property interest on certain public employees; Education Code § 44919(b) and Rialto controls whether plaintiff had a property interest in the first instance. Because plaintiff did not apply for the position in question, he did not have a property interest in an athletic coaching position. Therefore, defendants could not deprive him of his due process when he did not possess a constitutionally protected property interest.

The court finds that plaintiff does not have a constitutionally protected right in a hiring preference under section 44919(b) or Board Policy 4121, which implemented that statute. Accordingly, his procedural due process claim fails.

### 3. Claims Against Defendant DeLoria and Defendants in Their Official Capacity

The court briefly addresses two ancillary issues. Plaintiff brought suit against Superintendent DeLoria, but his allegations with regard to her do not go beyond those alleged against Principal Carey. He alleges: "[p]rior to terminating Adams, Principal Carey sought and obtained approval of Superintendent DeLoria, who is Principal Carey's supervisor and mentor and who participated in and ratified the decision to terminate Adams from the Head Varsity Coach position." SAC ¶ 59. There are no allegations of independent retaliatory conduct by defendant DeLoria. Additionally, plaintiff brought suit against both defendants in the official capacities for the same two claims addressed in this order.

Because plaintiff has failed to state a claim for both of his causes of action, then his claim against defendant DeLoria and against both defendants in their official capacities also fail.

### 4. Amendment Would Be Futile

Plaintiff argues that leave to amend would be appropriate due to a potential chilling effect on First Amendment speech if plaintiff were not able to vindicate his claims. The

court finds that further amendment would be futile. Plaintiff has already had the opportunity to amend his complaint in response to this court's order granting defendant Jefferson Union High School District's motion to dismiss the FAC. Dkt. 24. In response to that opportunity, plaintiff has alleged that he did not engage in protected speech, which forecloses his First Amendment claim. See Wasson, 203 F.3d at 663. Thus, he cannot argue a chilling effect if he was not the speaker. Plaintiff also alleges that he did not apply for the football head coach position, which forecloses any property interest under Rialto and Labor Code § 44919(b) that might otherwise be protected by the Due Process Clause. No additional factual allegations can change those dispositive elements.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion to dismiss. Because the court finds that further amendment would be futile, and because plaintiff has already been provided an opportunity to amend, the Second Amended Complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: March 9, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge